Kerry J. Jacobson
Assistant United States Attorney
District of Wyoming
P.O. Box 449
Lander, WY 82520
(307) 332-8195
(307) 332- 7104 Facsimile

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13-CR-126-J |
| v. | ) |
| | ) |
| STANLEY JONES, | ) |
| | ) |
| Defendant. | ) |

## MOTION IN LIMINE

**COMES NOW** the United States of America, by and through its attorney, Kerry J. Jacobson, Assistant United States Attorney for the District of Wyoming, and files the following Motion in Limine.

*Possible Witness Testimony:*

On September 16, 2013, the Defendant provided a witness list which lists six witnesses he proposes to call to testify on his behalf during the trial of this matter.  Two of the witness,

Mike Phillips and Jeff McManus, are under subpoena by the Government and therefore the Government does not have an objection to these two witnesses.  Witness Sheriff Ken Blackburn's proposed testimony, by order of the district court, has been determined to be inadmissible and irrelevant.  As to witness Clifford Winters--expected to testify as to his opinion that BLM Rangers are poorly trained and have a tendency to engage in selective prosecution—this would appear to be improper opinion evidence under Fed. R. Evid. 608 and the Government would request this witness be stricken.  As for the last two witnesses, Wallace Tolman and Karla Bird, the government would reserve making any objection until the nature of their proposed testimony becomes clear.  Generally however, the government would respectfully ask that the Defendant be prohibited from soliciting improper opinion testimony from any witness regarding the BLM personnel or opinions as to whether state or federal law should apply in this matter.

Lastly, the Defendant provided the government a number of letters written by Otto, Wyoming, residents regarding their views of this case.  To the extent the Defendant would attempt to use these letters during the trial of this matter, the government would object on the basis of hearsay and relevance.

### *Prospective Improper Defense:*

After the hearing on September 16, 2013, it appears the Defendant intends to present some sort of jury nullification defense, whether it be 1) that he had some kind of under the table permission from BLM to graze his cattle; 2) that he is being discriminated against or "targeted" for prosecution; 3) that the BLM was obligated to "fence out" the cattle; 4) that he should be entitled to use the land because of an alleged "bottleneck" on the property; and/or 5) that it is "impossible" to keep cattle from trespassing.  The Defendant, under any of these "defenses" does

not claim his cattle were not on the public land on a regular basis.  Instead he appears to allege that even though his cattle and personal property are trespassing, he should not be held responsible.  This is not a proper argument to be made to the jury.

While nullification is a "fact" of judicial life, the United States Supreme Court has explicitly recognized that juries have no right to nullify.  *See, Standefer v. United States,* 447 U.S. 10, 22 (1980).  The 2nd Circuit has stated, "[n]ullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court–in the words of the standard oath administered to jurors in the federal courts, to 'render a true verdict *according to the law and the evidence.'*  We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."  *United States v. Thomas,* 116 F.3d 606, 614 (2nd Cir. 1997)(citations omitted)(emphasis in original).

Therefore, the government would respectfully ask that the Defendant be prohibited from presenting any kind of jury nullification argument in front of the jury.

*Fencing Issue:*

As to the district court's request for guidance regarding any legal duty the BLM may be under to fence the public lands, the government has been unable to find any provision which requires the BLM to fence the public land to prevent trespass.  The defendant in *United States v. Shenise,* 43 F.Supp.2d 1190 (10th Cir. 1999), made a similar argument, claiming the BLM was subject to the state of Colorado's fencing laws.  The court in *Shenise* held that under the plain language of the Taylor Grazing Act, the BLM is not required to follow state fencing laws.  *Shenise,* 43 F.Supp.2d at 1197.  Instead, they can enter into "cooperative agreements" on a case

by case basis with respect to the cost and maintenance of fences, "which the Secretary [of the Interior] at his discretion, may allow the **_permittee_** to construct" and then there may be "further agreement concerning who pays what share of the costs of constructing the fence." *Shenise,* 43 F.Supp.2d at 1197.

The government is reluctant to get too mired down in this "fence-in/fence-out" issue because it is simply irrelevant to the ultimate finding of whether the Defendant allowed his cows to knowingly and willfully trespass on the public land. The duty is on the Defendant to prevent his livestock from entering the public land without a proper permit. The Defendant does ***not*** have a permit. Therefore, the Defendant must keep his animals off the public land whether there is a fence or not.

DATED this 16th day of September, 2013.

    Respectfully submitted,

    CHRISTOPHER A. CROFTS
    United States Attorney
    District of Wyoming


    */s/ Kerry J. Jacobson*
    Kerry J. Jacobson
    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 17th, 2013, I served a copy of the foregoing **TRIAL MEMORANDUM** upon the following by hand delivery to:

Mr. Stanley Jones

                                                */s/ Kerry J. Jacobson*_____
                                                KERRY J. JACOBSON
                                                Assistant United States Attorney