Kerry J. Jacobson
Assistant United States Attorney
District of Wyoming
P. O. Box 449
Lander, WY   82520
(307) 332-8195
Fax: (307) 332-7104

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-126-ABJ |
| | ) | |
| **STANLEY JONES,** | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' STATUS REPORT REGARDING DEFENDANT'S PROGRESS ON THE CONDITIONS OF JUDGMENT

COMES NOW the United States, by and through its attorney, Kerry J. Jacobson, Assistant

United States Attorney for the District of Wyoming, and submits the following as its status report

regarding the Defendant's completion of the condition that he remove his personal property from

federal lands. The United States would show the Court as follows:

### *Background*

The Defendant was convicted after trial by jury of one count of *unlawful use of public*

*lands* in violation of 43 C.F.R. § 2920.1-2(a) and (e); and two counts of *allowing livestock to graze*

*without a permit,* in violation of 43 C.F.R. 4140.1(b)(1)(i).

1

On December 2, 2013, the Defendant was sentenced to a 2 year term of probation on each count, to be served concurrently.   As a condition of his probation, the Defendant was ordered, among other conditions, to comply with the following:

> The defendant shall cooperate with the Bureau of Land Management and remove his personal property from federal lands, within six months of sentencing. Failure to complete the clean-up and removal efforts may result in revocation of his supervised probation.   Failure to remove property within six months will also be deemed to result in the defendant disavowing the ownership of his property and allow BLM to remove it.

The Defendant appeared in Court on August 4, 2014, and reported that he had removed all of his personal property from federal lands.   The supervising U.S. Probation Officer showed a video in open court that he had taken in the area in question, hereinafter referred to as the Canady Allotment.   The video generally showed poles and pieces of wood strewn through the sagebrush.

For purposes of providing a status to the Court, the undersigned requested that BLM management go to the Canady Allotment the week of August 4, 2014, to see what had been removed and what remained on the federal land.

There are two areas that were at issue in the *unlawful use of public lands* conviction: an "upper bench" area; and a lower area, down around a hill, both in the Canady Allotment.   At trial, evidence showed that the Defendant had taken responsibility for the items on the upper bench, although he did not agree that all of the items were his.   With regard to the lower area, the Defendant adamantly maintained the items were not his.   However, evidence showed that among the items in the lower area was a non-operable vehicle which had last been registered to the Defendant and his wife.   The charge the jury convicted the Defendant of encompassed both the upper bench and the lower area of the Canady Allotment.

2

On August 6, 2014, Mike Philips, BLM's Assistant Field Manager for Resources, Rita Allen, the Realty Specialist, and Cierra Carlson, a Civil Engineering Intern, went to the Canady Allotment and made the following observations:

In the upper bench area there were weathered wooden planks and poles which appeared to have been used to keep wooden ties and poles off of the bare ground.   These items appeared to have been in the area a long time, perhaps over twenty years.   There was also a discarded bed frame and springs, and a roll of rusty woven wire in this area.   This appears to have been the area in which U.S. Probation's video, shown in open court on August 4, 2014, was taken. Photographs of this area are attached as exhibits A through D.

In the lower area, down around a hill, stakes had been placed by BLM's civil engineers so the Defendant would know where to remove property.   Items which appeared to have intrinsic value, such as wooden posts, steel posts, railroad ties, rolls and bundles of good wire, and some farm equipment were lined up along the fence line to the adjoining private land.   Photographs depicting items the Defendant removed from the federal land in question are attached as exhibits E through H.   Some refuse items and piles of used bricks were on the private side of the line.

Still remaining on BLM land are old wooden posts, rusted metal posts, wooden planks, what appears to be parts of old dismantled wooden buildings, rubber tires, inner tubes, rolls of used and rusted fencing material, junk iron, discarded bicycles, corrugated sheet metal, rubber hose, what looked to be a wooden truck box, firewood, a bed mattress, bed springs, broken glass, rusted cans, metal drums, old buckets, pipe, pvc pipe, farm equipment parts, broken concrete, metal tubing, broken dishes, household trash, and a garbage disposal pile.   This area did not appear in U.S. Probation's video shown in open court on August 4, 2014. Photographs of this area are attached as exhibits I through L.

In a third area of the Canady Allotment there were old, weathered utility poles which appeared to have been platforms for storing other items, and large tree trunks which had been sawed off at each end. To the north of this area was an overgrown silage pit which had been dug into the hillside on BLM land.   There are old tires in the pit area. It is apparently common practice to use tires to hold down heavy plastic which is placed over silage for storage.   The pit is grown over with weeds and vegetation.

### *Discussion*

The Judgment in a Criminal Case instructed the Defendant to remove his personal property from federal lands, which the Defendant represented to the Court on August 4, 2014, he had done. The BLM personnel who looked over the Canady Allotment on August 6, 2014, estimates it will take 40 to 50 dump truck loads to haul away the remaining property on federal land.   With dump fees, labor and the use of the necessary vehicles, the BLM estimates it will cost between $20,000 and $50,000 to remove the remaining items from federal land.   The BLM does not currently have funding to remove the remaining items.   Although they are exploring the possibility of burning some of the items, there are potential hazardous materials issues which must be resolved prior to any burning, as some of the wooden items appear to have been treated with creosote, a preservative chemical and known carcinogen to humans.

Although none of the remaining items can definitively be tied to the Defendant, these items were interspersed with items the Defendant has claimed as his.   The jury found the Defendant responsible for the items in the lower area below the hill, despite his argument that the items were not his.   The Defendant indicated some interest on August 4, 2014, in hauling off the firewood remaining on the site.

*Conclusion*

The government hereby submits the above as its status report to the Court and respectfully requests the Court's Order requiring the Defendant to remove the remaining items, as described above and in photographs, from federal land; or in the alternative, an Order indicating the items are now the responsibility of the BLM and giving the BLM authority to remove and/or destroy the remaining items on the Canady Allotment, consistent with the Court's December 2, 2013, Judgment in a Criminal Case.

DATED this 18th day of August, 2014.

Respectfully submitted,

CHRISTOPHER A. CROFTS
United States Attorney

By:      */s/ Kerry J. Jacobson*
KERRY J. JACOBSON
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2014, I served a copy of the foregoing **UNITED STATES' STATUS REPORT REGARDING DEFENDANT'S PROGRESS ON THE CONDITIONS OF JUDGMENT** upon the following by depositing same, postage prepaid, in the United States Mails addressed to:

Mr. Stanley Jones
135 Main Street
Otto, Wyoming 82434

*/s/ Kerry J. Jacobson*
KERRY J. JACOBSON
Assistant United States Attorney